# OCTOBER 9, 1935

## MELVIN WILSON v. THE STATE.

No. 17155.   Delivered February 6, 1935.
State's Rehearing Granted May 29, 1935.
Appellant's Rehearing Denied October 9, 1935.

The opinion states the case.

*Minton & Minton,* of Hemphill, for appellant.

*Hollis Kinard,* Dist. Atty., of Orange, and *Lloyd W. Davidson,* State's Atty., of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of murder with malice aforethought, and his punishment was assessed at confinement in the State penitentiary for a term of 7 years.

The record shows that on the afternoon of February 3, 1933, the appellant shot and killed Willis Sanders in the town of Milam. It appears from the record that a few minutes prior thereto Jack Wilson and Noble Russell were engaged in a quarrel; that Jack Wilson picked up a plank and advanced toward Russell in an attitude of striking Russell with it; Russell drew his knife and told Jack Wilson that if he struck him, Russell, with that plank, he, Russell, would cut his throat, whereupon Jack Wilson dropped the plank and walked away. About this time the appellant came up and said something to Russell which none of the witnesses seem to have understood,

whereupon Russell used some very indecent language toward and concerning the appellant. The appellant then drew his pistol and shot twice at Russell who dropped behind a brick pillar at a filling station. At this time Willie Sanders appeared on the scene. He and the appellant went to the appellant's automobile which was parked but a very short distance from the filling station and engaged in what appeared to be a friendly conversation, when Noble Russell suddenly emerged from behind the brick pillar with a quart bottle of cylinder oil and struck at appellant. Willie Sanders knocked the bottle up which diverted its course and it hit the rear of the appellant's automobile. Then all three, Russell, Sanders, and the appellant went into a huddle for a second or two when Russell and Sanders began to run down the street along the side of a store building where appellant pursued them shooting as he went. Willie Sanders was shot in the back from the effects of which he died about 30 minutes after the occurrence. The record fails to show that there was any ill feeling existing between the appellant and Willie Sanders or that the appellant had any animosity towards him.

The appellant for the first time in his motion for new trial raises objections to the court's main charge, but we can not consider the same because none were interposed at the trial within the time prescribed by law. See Art. 658, C. C. P., and the following authorities: Terry v. State, 98 Texas Crim. Rep., 540; Roberts v. State, 99 Texas Crim. Rep., 492; Edwards v. State, 91 Texas Crim. Rep., 196.

The appellant also complains of the action of the trial court in overruling his motion for new trial based on the ground of misconduct of the jury in referring to the failure of the appellant to testify. Several jurors appeared at the hearing and testified that before reference was made to the appellant's failure to testify that some were for the minimum punishment of 2 years, while some were for 25 years. One of the jurors testified it was hard to say whether he considered it as a circumstance in the case. He could not say whether it was a general discussion by the jury or not as he did not know whether all of them engaged in the discussion thereof. We do not deem it necessary to enter upon an extended discussion of this question other than to quote from the opinion of this court in the case of Buessing v. State, 63 S. W., 318, as follows: "All the jurors explain that they were not influenced by this discussion, but it is generally conceded that the matter was alluded to in the jury room and before they had agreed

on their verdict. As has been repeatedly held, our statute on this subject is mandatory; and, when it has been violated, we will not speculate upon any possible injury that may have ensued to appellant." The following cases are in accord with the case of Buessing v. State, supra: Mizell v. State, 197 S. W., 300; Boozer v. State, 198 S. W. 295; Walling v. State, 128 S. W., 624. Many other cases might be cited. In the case under consideration all of the jurors admitted that the matter was discussed in the jury room before they had arrived at their verdict.

Having reached the conclusion that the trial court erred in not granting the appellant's motion for new trial, the judgment of the trial court is reversed and the cause is remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

KRUEGER, JUDGE.—At a former day of this term we reversed the judgment of the trial court and remanded the case on the ground that the jury discussed and considered as a circumstance against the appellant his failure to testify in his own behalf. The State has filed a very cogent motion for rehearing in which our attention is called to the difference between the testimony of the five jurors who testified upon the motion for new trial and their affidavits made and attached to the appellant's motion.

Upon a critical examination of the case, we find that the affidavits of all of the five jurors, to-wit, Pratt, Broom, Click, W. L. Gooch, and Worthy, are identical with the exception of the names. Their testimony given at the hearing on the motion for new trial is much milder than the language contained in the affidavits. We quote from the testimony of each of the jurors who testified at the hearing of the motion for new trial:

Mr. Pratt testified that the jury discussed the appellant's failure to testify, but in telling of what actually happened he said: "I heard one or two when we first went into the room, maybe one party mentioned it, wondering why the defendant did not testify and then later, maybe after one vote had been taken, the question was brought up again. I couldn't say if

it was a general discussion because I don't know if all the jurors discussed it. I heard one or two different times."

On cross examination he said: "It was just a bare allusion to the fact that the defendant did not testify."

The juror Broom testified: "There wasn't much mentioned about the fact that the defendant did not testify. I don't remember just who was discussing it. I don't remember what was said. It was just mentioned, wondering why they did not use the defendant on the stand to testify. I don't remember if anybody made any reply to that. One time is all I recall that it was referred to."

On cross examination he testified: "It was just mentioned and if there was a reply I did not hear it."

Mr. Click testified on direct examination: "I never heard but one juror talking about it but it seemed like all of them heard it. Yes sir, it seemed like those who were not talking were listening. Yes sir, that was before we agreed on the amount of punishment. I think it was before the agreement as to the guilt or innocence of the defendant. Yes sir, there was quite a diversity as to the amount of punishment to be given to the defendant after the agreement of guilt."

On cross examination he said: "I guess it was barely mentioned and that was all."

W. L. Gooch testified: "I may have mentioned it to Mr. Pratt as we came in and sat down. I just made the remark wondering why the defendant did not testify and he said he did not have to if he did not want to. No one besides Mr. Pratt and myself heard that except maybe Mr. Broom, John Broom. The other jurors were scattered pretty well. I think some of them mentioned it later but I couldn't tell you what was said. There was no general discussion. No sir, I do not mean all 12 of them by general discussion. Some of them said something about it. Yes sir, that was before the jury agreed upon the verdict."

On cross examination he said: "It was just an allusion, not a discussion."

Mr. Worthy testified on direct examination as follows: "I recall that the fact that the defendant did not take the stand was mentioned by Mr. Gooch and after they talked about it I remembered it. He just asked why he didn't testify. Nobody made him an answer. I did not say it was mentioned again before the verdict was reached. It was mentioned again some time later."

On cross examination he said: "It was just mentioned that he did not testify. There was no discussion about it."

The foregoing is the testimony of the jurors who made the affidavits which are attached to the appellant's motion for new trial. In addition the appellant also called as a witness the juror Jordan who testified on direct examination as follows: "I don't know if the jury discussed the failure of the defendant to testify during their deliberations. It was mentioned. I heard someone mention it and someone spoke up and said it was not compulsory and said if he wanted to get on the stand they couldn't keep him off. I don't know who said that. Beck Gooch was the first one to allude to the fact that he did not testify. Something was said later on but after they told them it was not compulsory to testify there was nothing else said about it."

On cross examination he said: "There was no general discussion. It was just barely mentioned. There was nothing else mentioned by us since somebody said it was not compulsory. Yes sir, that was all that was said. If it was mentioned more than twice, I do not know of it."

Mr. Chambers testified on direct examination: "The matter of the defendant not testifying was not discussed very much. I do not remember who mentioned it. I don't know what was said. Some of them made the remark wondering why he did not take the stand himself. I don't think I remember anything else that was said in that connection because it was discussed but very little."

On cross examination he said: "That was merely mentioned and passed on without any discussion. It was not a discussion. It was just barely mentioned."

Mr. Cooper and Mr. Hussy testified that they heard no mention of the fact that appellant had not testified. Vessie Gooch testified on direct examination as follows: "I heard the matter mentioned or discussed in the jury room by a juror that the defendant did not take the stand and testify. I don't remember who mentioned it. It was just mentioned. I don't remember which one of the jurors mentioned it. It was mentioned one time. Somebody asked the question, wondering why the defendant did not take the stand. If anybody made a reply I don't remember it."

On cross examination he said: "I said it was just mentioned and that was all. That is all it was. Just the bare fact that it was mentioned that he did not testify, and no discussion was had."

The juror Strickland testified that if there was any mention of the appellant's not testifying he did not hear it.

No reason is assigned by the trial judge as to why he overruled the motion for new trial. Under the circumstances, it would be our duty to consider the record from the strongest light which would support his actions in regard to the matter. The issue seems to have been clearly made upon the hearing of the motion for new trial as to whether there was any discussion on the part of the jury of appellant's failure to testify and that such failure was considered as a circumstance against him, or whether the fact that he did not testify was merely alluded to. It seems that the strongest any juror put the matter was that someone of the jurors expressed wonder as to why the appellant did not testify and that another juror said it was not compulsory and said if he had wanted to testify they could not prevent him from doing so. It appears further from the testimony of the jurors that there was no general discussion of the failure of the appellant to testfy as may have been indicated by the affidavits signed by some of the jurors.

It has been held many times that the record must show that the failure of the defendant to testify was taken as a circumstance against him. This is the language of the statute. A mere allusion to that fact would not call for the granting of a new trial or a reversal by this court. See Lamb v. State, 98 Texas Crim. Rep., 358, 265 S. W., 1035, and cases therein cited. It has been further held by this court that the granting of a motion for new trial for the character of misconduct set out in this case is within the discretion of the trial court and that his action will not be reversed on appeal unless it is clearly contrary to the testimony. See Lamb v. State, supra; O'Mary v. State, 118 Texas Crim. Rep., 78, 43 S. W. (2d) 95; Watson v. State, 82 Texas Crim. Rep., 305, 199 S. W., 1113. In the last mentioned case, this court said: "When the allegations in the motion for new trial charging that the jury misused the accused's failure to testify * * * are controverted, and on investigation and conflicting evidence determined against him the finding of the court is given the weight attaching to any other question of fact submitted for judicial determination." See Graham v. State, 123 Texas Crim. Rep., 121, 57 S. W. (2d) 860. The bare allusion or reference to the failure of the accused to testify has been held not a violation of the statute. The question on appeal is whether the facts made evident that the appellant's failure to testify was

taken by the jury as a circumstance against him. See Cooper v. State, 72 Texas Crim. Rep., 266, 162 S. W., 364. On appeal the decision of the trial judge will prevail when the evidence is conflicting as to whether the jurors disobeyed the statute. A reversal will not result unless the evidence heard on the motion for new trial convinces this court that in overruling the motion the trial court abused his discretion. See Scrivnor v. State, 50 S. W. (2d) 330.

In the original opinion the writer thereof followed the decision of the late Judge Davidson in the case of Walling v. State, 128 S. W., 624, but the rule announced in that case seems to have been modified by the subsequent decisions of this court hereinabove referred to.

Again reviewing the testimony adduced upon the motion for new trial, as hereinabove set out, and the authorities hereinabove referred to, which bear upon the question under consideration, we have reached the conclusion that we were in error in our original opinion. Therefore the motion for rehearing is granted, the judgment of reversal is set aside, and the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In an unusually well prepared and able motion for rehearing,—and upon a review of many decisions of this court,—appellant insists that our opinion of affirmance was wrong and against the weight of authority in this State.

We have carefully examined the cases cited and others, in the light of the motion, but are not able to agree with appellant. We do not find that condition of conflict on the question of the proper disposition of a complaint of misconduct of the jury based on the use of appellant's failure to testify,—which appellant asserts.

The statutory statement of Art. 710, C. C. P. is that the failure of the defendant to testify shall not be taken as a circumstance against him, nor be alluded to or commented on by counsel in the cause. Clearly the law of any case must rest upon its facts as evidenced by the record.

Turning to appellant's statement of facts upon his motion for new trial, we note that eleven of the jurors who sat in the case testified on the hearing of said motion. Some of them swore they heard no mention of defendant's failure to testify. Testimony of the others amounts to a declaration that all they heard was a mere mention, a bare allusion, and an analysis of the entire testimony leads us to conclude that it was based largely, if not entirely, upon the statement made by juror Gooch, who testified that after retiring he remarked to another juror that he wondered why the defendant did not testify. Gooch said the man addressed replied that the defendant did not have to testify unless he wanted to, and that this ended the matter. He was substantially supported by the other jurors who heard the matter mentioned.

We are referred to no case where there has been a reversal upon such facts. We have examined Buessing v. State, 63 S. W., 318; Mizell v. State, 197 S. W., 300; Walling v. State, 128 S. W., 625; Lout v. State, 56 S. W. (2d) 454; Boozer v. State, 198 S. W., 295; Rees v. State, 278 S. W., 451; Tyler v. State, 39 S. W. (2d) 897, and the other cases cited by appellant, as well as others. In several of said cases the appeal was disposed of and the case reversed for other errors than the one referred to. Appellant seems chiefly to rely upon the Rees and Tyler cases, supra. The Rees case was affirmed, and the only part of the opinion stressed by appellant is that in which we said that misconduct of a juror having been established, the presumption of injury is not to be rebutted solely upon testimony of the juror that he was not influenced. We find nothing in our opinion of affirmance in the instant case indicating that we here held differently.

In the Tyler case, supra, it is made to appear that when the matter of the failure of the accused to testify was broached in the jury's retirement, one juror said that it was not permissible to discuss that; the foreman of the jury replied that the judge had not instructed them not to discuss it. "x x x This matter was in open discussion there." Another juror swore on the hearing of the motion for new trial that from what was said some of them considered that the accused was afraid to take the stand. Another juror swore that he heard it said in the jury room "If he wasn't guilty, why didn't he go on the stand and say so." It seemed to us when we wrote in the Tyler case,—and now,— that there could hardly be a plainer violation of the statutory forbiddance against taking the failure of the accused to testify as a circumstance against

him, than in that case; but we find no such facts in the case before us as there appear.

As stated, we have carefully reviewed each authority cited by appellant's able counsel, but feel constrained to adhere to our judgment of affirmance.

The motion for rehearing is overruled.

*Overruled.*